(C. D. 786)

Tillotson Clay Products Co. v. United States

United States Customs Court, Third Division

(Decided June 24, 1943)

*Harper & Harper (Abraham Gottfried* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General *(James F. Donnelly* and *Frank X. O'Donnell, Jr.,* special attorneys), for the defendant.

Before Cline, Keefe, and Ekwall, Judges

Keefe, Judge: This case involves the classification of importations from England, invoiced as "Dried Seaweed Extract" (Moss Gelatin). The collector classified the merchandise as a nonenumerated manufactured article and assessed duty thereon at 20 per centum ad valorem under paragraph 1558, Tariff Act of 1930. The plaintiff claims that the merchandise should have been classified as moss, manufactured, dutiable at 10 per centum ad valorem under paragraph 1540, or free under paragraph 1722 as crude moss.

The paragraphs of the Tariff Act of 1930 here involved provide as follows:

PAR. 1558. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not specially provided for, a duty of 20 per centum ad valorem.

PAR. 1540. Moss and sea grass, eelgrass, and seaweeds, if manufactured or dyed, 10 per centum ad valorem.

PAR. 1722. Moss, seaweeds, and vegetable substances, crude or unmanufactured, not specially provided for.

At the trial a witness for the plaintiff testified that his company manufactures kelp products and miscellaneous water soluble colloids; that the principal production was algin obtained from kelp; that products of Irish moss were used for other articles; and that he had ordered the merchandise in question and saw it when it arrived at the plant. The witness stated that in his opinion the merchandise was processed from Irish moss, and he admitted that it was a product of Irish moss and not physically the same product. This witness was the superintendent of the Kelco Co. However the merchandise was shipped to Tillotson Clay Products Co. and the connection between the two companies was not shown, nor was it explained why the witness, employed by the Kelco Co., ordered and received the merchandise.

A chemist testified that in order to determine whether or not a product was derived from Irish moss about 5 drops of a 10 per centum solution of potassium hydroxide is added to a 5 per centum solution of moss, and a "gel" characteristic only of Irish moss will thereby be produced. If about 5 c. c.'s of a concentrated barium chloride solution is added to about 5 c. c.'s of moss solution, the reaction will be a characteristic "gel" precipitate. After an examination of the imported merchandise in court, the witness testified that he would not be "dead sure" that it was derived from Irish moss, but could become definitely sure only by a chemical test. He believed, however, that the imported product was a processed Irish moss.

The Government offered in evidence a report of analysis prepared by a Government chemist. The report set out that the sample of the imported merchandise consists of a dried seaweed extract, not sodium alginate, which had been subjected to a treatment sufficient to destroy the cellular structure of the original seaweed, and in solution it was similar to a solution of carrageen moss, and was 88 per centum water soluble. This report also shows that a sample of crude carrageen or Irish moss was examined and found to be 62 per centum water soluble.

The importer contends that the imported product is dutiable directly under paragraph 1540 as "moss, * * * manufactured" because the processing thereof has not destroyed its identity as Irish moss; and further that if not directly so dutiable it is dutiable by similitude.

The Government contends that the presumption of correctness of the collector's classification has not been overcome, first, because the actual character of the importation has not been established, there being no evidence relative to the methods of manufacture, and second, because there is no evidence establishing the uses to which the commodity is applied and the manner in which such uses differ from the uses of crude seaweed.

The sample of the imported merchandise before us consists of very thin brown flakes, hard and brittle in character, and in form somewhat resembling broken potato chips. There is nothing in the appearance of the article to indicate that it was derived from a moss or seaweed.

The question for our determination is whether the product is a manufacture of moss or seaweeds, and as such classifiable under paragraph 1558, or is moss or seaweeds, manufactured.

There are many decisions of the courts differentiating an article, manufactured, from a manufacture of an article. As stated in the case of *United States* v. *General Dyestuff Corp.* 29 C. C. P. A. 53, C. A. D. 170,

\* \* \*. It is rarely difficult to determine when a thing has had applied thereto a manufacturing effort, but difficulty is often encountered in determining where the narrow border line rests between *a thing manufactured and the manufacture of a thing*

\* \* \*. In some of the cases, not necessary to cite, the terms "manufactures of a thing" and "a thing manufactured" have been interchangeably used. In other decisions, in situations much like the present one, the courts have distinguished between a thing which has been manufactured only to a certain point and a thing which has been manufactured to the point where it has become the manufacture of a material, to wit, a wholly new article with a new name and use. Running through all the decisions is the general fundamental principle that before an article of imported merchandise may be regarded as the *manufacture of* a material, it must have been so far processed from its original condition as to have acquired new characteristics and thereby become a new article with a new name and new use.

In the case of *United States* v. *Wilkinson Process Rubber Sales Corp.*, 22 C. C. P. A. 60, T. D. 47051, involving certain linatex, a material made from rubber latex, the court pointed out that the difficulty with the Government's contention (that the product was a manufacture of rubber) was that it seeks to apply the "rule to the imported merchandise which is still a material and is suitable only to be used as a material for being manufactured into articles which themselves would be manufactures of rubber." The Government there made no distinction between an advanced rubber material and a completely manufactured rubber article made from a rubber material. The court there concluded, as follows:

\* \* \*. There is no question but what under the rule \* \* \* the imported rubber at bar has been manufactured beyond the crude stage. It is, therefore,

a nonenumerated manufactured article. It is not a manufacture of rubber and dutiable within the provisions of paragraph 1537 for the reason that it is still only a material and has not been dedicated to any particular use.

In *United States* v. *Betz*, 30 C. C. P. A. 16, C. A. D. 208, the subject before the court was seaweed that had been treated by removing from the plants the sea salts and soils. The seaweeds were treated with acids and then with alkali so that the original seaweeds indissolvable in water became dissolvable. There it was claimed that the product was dutiable as seaweeds, manufactured. The court noted as a matter of common knowledge that seaweeds are used as fertilizer and that they also have various other uses, while the product before it had been produced by both chemical and physical processes of manufacture and changed to such an extent from its original state that it had attained a distinctive name and character different from that possessed by the seaweeds, and although it still remained a material from which alginic acid may be obtained, it was, nevertheless, a completed article of commerce, having but one use or class of uses, and was not commercially capable of the various uses to which seaweeds may be put. Consequently it was held to be a manufacture of seaweeds, and not seaweeds, manufactured. Inasmuch as there is no provision in the tariff act for manufactures of seaweeds, the merchandise was held dutiable as a nonenumerated manufactured article.

The merchandise here before us undoubtedly was derived from Irish moss. The physical character of the parent material has been changed. The record is silent, however, as to the methods used in processing the seaweeds in order to produce the imported material. As contended by the Government, there is no evidence of record establishing the uses of the imported product and the manner in which such uses differ from the uses of crude seaweed or moss. From the decisions heretofore cited, it is apparent that the essential elements of proof required, in order to determine whether an article would be classifiable as a manufacture of a thing, or as a thing manufactured, are first the extent of the processing effort, and, second, the uses of the processed material. Without such evidence before it, the court is unable to determine whether the product here consists of a manufacture of seaweeds or moss, or is merely seaweeds or moss, manufactured.

In view of the inconclusive character of the evidence presented we find that the presumption of correctness of the collector's classification has not been overcome. Judgment will therefore be entered in favor of the Government.